1

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF NEW YORK

3    ----------------------------------------------------------

4    UNITED STATES OF AMERICA,

5                     -versus-                    08-CR-77

6    DEAN SACCO.

7    ----------------------------------------------------------

8                     TRANSCRIPT OF SENTENCING PROCEEDINGS

9    held in and for the United States District Court,

10   Northern District of New York, at the Federal Building and

11   Courthouse, 15 Henry Street, Binghamton, New York, on

12   WEDNESDAY, December 3, 2008, before the HON. THOMAS J. McAVOY,

13   Senior United States District Court Judge, PRESIDING.

14

15   APPEARANCES:

16   <u>FOR THE GOVERNMENT</u>:

17   UNITED STATES ATTORNEY'S OFFICE

18   BY:  MIROSLAV LOVRIC, AUSA

19        Bighamton, New York

20

21

22   <u>FOR THE DEFENDANT SACCO</u>:

23   KELLY FISCHER, ESQ.

24   Binghamton, New York

25

VICKY ANN THELEMAN, RPR, CRR
UNITED STATES DISTRICT COURT

USA vs Dean Sacco                                    2

1              THE CLERK:  United States of America versus

2     Dean Sacco, 2008-CR-77.  Please come forward and state

3     appearances for the record.

4              MR. LOVRIC:  Miroslav Lovric for the

5     government.  Good morning, your Honor.

6              THE COURT:  Good morning, again, Mr. Lovric.

7              MR. FISCHER:  Good morning, your Honor.  Kelly

8     Fischer for Mr. Sacco.

9              THE COURT:  Morning, Mr. Fischer; morning,

10    Mr. Sacco.

11             THE DEFENDANT:  Good morning.

12             THE COURT:  All right.  The Court has received

13    and reviewed materials submitted, memoranda from the

14    government, from the defendant, the presentence investigation

15    report prepared by the probation department as amended and

16    revised, some information about the forfeiture count in the

17    indictment which I think the government plans to move to

18    dismiss after the sentencing.

19             Mr. Fischer, have you had an opportunity to

20    review with Mr. Sacco the contents of the presentence

21    investigation report?

22             MR. FISCHER:  Yes, your Honor.

23             THE COURT:  Mr. Sacco, did you read over the

24    presentence investigation report?

25             THE DEFENDANT:  Yes, I did.

USA vs Dean Sacco                                    3

1          THE COURT:  Did you talk over the contents of

2   that report with Mr. Fischer?

3          THE DEFENDANT:  Yes, we did.

4          THE COURT:  Okay.  Is there anything in that

5   report, Mr. Fischer?  You haven't filed any objections to the

6   report, you filed a sentencing memoranda.  Is there anything

7   about the content of the report you'd like to discuss with

8   the Court now?

9          MR. FISCHER:  No, your Honor.  Any concerns

10  that I would have would not change the ultimate guideline

11  recommendation and so I've discussed it with Mr. Sacco and

12  there are no objections to the report at this point.

13         THE COURT:  All right.  How about you, Mr.

14  Sacco?

15         THE DEFENDANT:  Well, there was one thing that

16  the guy that did the PSI added, he embellished a little bit.

17  He in his report claimed that I threatened Miss O'Connor with

18  a knife and said that while she was bleeding I would -- and

19  dying, I would rape her.

20         THE COURT:  Well, you threatened to rape her

21  and kill her while you were raping her as I recall the

22  testimony.

23         THE DEFENDANT:  Well, I've never had a harsh

24  word with the young lady, but my point is that Miss O'Connor

25  never made that statement that I used a knife and that while

USA vs Dean Sacco                                    4

1   she was bleeding -- he put those in the report.  So you asked

2   me if I had any problems.  Yes, I have a problem with his

3   embellishing to make it look like I was even worse than what

4   Miss O'Connor lied about.  Thank you.

5              THE COURT:  Well, there isn't much that can

6   make you look any worse.  The Court is going to adopt the

7   factual contents of the presentence report by a preponderance

8   of the evidence.

9              What would you like to say, Mr. Fischer, on

10  behalf of Mr. Sacco before I sentence him?

11             MR. FISCHER:  Thank you, your Honor.  First of

12  all, Judge, I don't know if it's been said on the record yet

13  but I want to make it clear that throughout the course of

14  this, up to the point where we went to trial, I solicited

15  from the government an offer to try to resolve this matter

16  without having to go to trial.  There was room on our part to

17  try to resolve this consensually.  No offer was made,

18  nothing.  The only offer that was made, plead guilty to the

19  counts in the indictment which would place Mr. Sacco squarely

20  where he is right now anyway.  So, in my opinion, from my

21  perspective, that was really no offer at all, no choice at

22  all for Mr. Sacco and I want to make it clear he was not the

23  one that pushed this matter through the trial process,

24  compelled the witnesses to come forward.  There was a

25  willingness on his part to resolve this matter without that.

USA vs Dean Sacco                                    5

1    I think that's important for sentencing purposes because part

2    of the consideration is what the witnesses had to endure,

3    particularly what Shannon O'Connor had to do.  She had to

4    come and testify and be cross-examined.  I understand that's

5    a component, I'm concerned about it and I raise it for that

6    reason.

7                  And, Judge, I'm going to be very concise.

8    Really the only other thing I can say then is this:  It's

9    quite clear I think to anybody who is even remotely familiar

10   with the facts that occurred, that were presented during the

11   course of this trial, what Mr. Sacco's background is.  And I

12   know for sentencing guideline ranges it's probably not even

13   going to have an effect but I think for, in a general sense,

14   sentencing issues, it's a consideration that should be taken

15   into account.  Mr. Sacco acknowledged a long time ago before

16   these events occurred that he had a problem.  He sought

17   treatment for it.  He sought treatment when he was

18   incarcerated, was given a recommendation to write a book and

19   that would help him solve his problem, so he did that.  He

20   took that advice, he followed up with that.  He was unable to

21   effectively deal with the problem that he knew he lived with

22   and it continues today and put him exactly where he stands

23   right now.  It is that very problem that he raised years ago

24   that puts him where he is now.  He acknowledges that he has

25   some deep emotional history and difficulties that place him

USA vs Dean Sacco                                    6

1    where he is today.  I request recommendation from the Court

2    that he be treated for that problem because it is a problem.

3    It would have a beneficial impact on him, I think it would

4    have a beneficial impact for anybody with whom he would have

5    contact in the future.

6                    I also have concerns, your Honor, that I need

7    to put on the table that are related to about how he will be

8    treated in prison.  Given his age, his history, and these

9    criminal convictions, he's at risk.  He's at risk physically

10   of -- frankly, he's at risk of seriously bodily harm.  He

11   could be killed, and I understand the government does what it

12   can to prevent that.  Given this history, this is a

13   legitimate and serious concern that he has and I share it

14   with him.  I think a recommendation for treatment would

15   potentially place him in a safer situation than a sentence

16   without that recommendation and so I ask the Court on those

17   bases to impose its sentence and to make a recommendation

18   that he receive treatment rather than just pure

19   incarceration.

20                   THE COURT:  Would you also seek a

21   recommendation from the Court that I request the Bureau of

22   Prisons to place him in administrative segregation?

23                   MR. FISCHER:  I believe, your Honor, that that

24   is appropriate, yes.

25                   THE COURT:  Okay.  Mr. Lovric, would you like

USA vs Dean Sacco                                          7

1    to be heard?

2             MR. LOVRIC:  Yes, Judge.  Judge, standing

3    before this Court is the ultimate sexual predator, Mr. Dean

4    Sacco.  Everything that we know, and I underscore what we

5    know, about Dean Sacco is that he is nothing short of a

6    sexual predator, a sexual psychopath, a sexual feign who has

7    prayed on children and in my estimation would continue to

8    pray on children were he ever to be released on the streets.

9    Mr. Sacco in his own words in his book describes how at a

10   very early young age he sexually molested his own sister.  He

11   sexually molested her friends.  Mallory Monagan testified how

12   he sexually assaulted her.  Mr. Sacco in his criminal history

13   has displayed a violent tendency and a violent nature.  When

14   I first learned of his criminal conviction in New Jersey,

15   even in my 20 some years as a prosecutor I found it quite

16   stunning.  He kidnapped and highjacked a bus with 44 people

17   on it, held them at gun point, robbed them and then but for

18   the heroic efforts of a bus driver, may have even physically

19   hurt someone.  And the bus driver ends up shooting him twice.

20   He is just an absolute out of control, and I don't want to

21   call him a human being, because he's not a human being, but

22   he's absolutely just out of control in every sense of the

23   word.  He has been a danger to society and he will always be

24   a danger to society.  My amazement with Mr. Sacco is that

25   there aren't more victims in his trail of rampage.  It is

1   unfortunate and horrific what Shannon O'Connor went through

2   at the hands of Dean Sacco and what Mallory Monagan

3   experienced and what Mr. Sacco's sister and her friends and

4   all the other girls that he broke into their houses and

5   entertained himself, but it is just amazing that there aren't

6   more victims out there because he is absolutely out of

7   control and I take dispute with defendant claiming that he

8   acknowledges his problem.  He has acknowledged absolutely

9   nothing.  Nothing.  He has never accepted responsibility for

10  his actions here.  He has never apologized to Shannon

11  O'Connor, to this Court.  He acknowledges nothing and that's

12  because Mr. Sacco is not capable of acknowledging and seeing

13  how he has harmed anyone else outside of his own little self.

14  So when he says he acknowledges, he acknowledges nothing.

15  He's accepted no responsibility.  He pled guilty in state

16  court only after he was convicted in federal court and only

17  then he acknowledged that there were sexual contact with

18  Shannon O'Connor.  I read the plea minutes and Mr. Sacco in

19  his ever famous twisting of words brings himself to say that

20  there was contact between the victim, Shannon, and his penis

21  in this matter but fails to go into any kind of explicit

22  detail about how he committed that sexual act.  And so he

23  essentially pled guilty in state court because they offered

24  him a very, very sweet deal to plead guilty and I'm not here

25  to judge that because I am thankful for the fact the victim

USA vs Dean Sacco

9

1    did not have to testify in state court as well.  But for this

2    defendant to stand before this Court and somehow try to say

3    that he has acknowledged his actions and conduct, I would

4    quite frankly say, Judge, stretches the imagination of

5    candor.

6              There was no plea offer in this case.

7    Mr. Sacco deserves no plea offer.  He deserves no

8    consideration.  We, the government, were not going to give

9    him the opportunity to get out of these charges and to be

10   allowed to go and molest other children.  I think he somehow

11   may feel he was entitled to a plea deal or a plea offer.

12   There was none forthcoming because he deserves nothing.  He

13   deserves no consideration.  When we look at why these

14   statutes are in place, they're in place to put people like

15   Mr. Sacco away forever so they cannot roam the streets of

16   society and harm children and that is exactly what I believe

17   this Court should do.  This Court should send him away for

18   the rest of his life so he can never continue to be a danger.

19             THE COURT:  Mr. Sacco, would you like to say

20   anything before I sentence you, sir?

21             THE DEFENDANT:  Yes, Judge.  First of all, I'd

22   like to let you know I have a statement here that's going to

23   take me a couple of minutes but -- Judge, I'm embarrassed and

24   I'm ashamed when I stand in front of you and you think that

25   I'm the kind of guy that would have hurt her in any way,

USA vs Dean Sacco

1   shape or form.  I'm ashamed to stand in front of you for you

2   to think I might have even raised my voice at her or struck

3   her or did any of those things to her because Shannon and I

4   never, never had a harsh word in the six months that we had

5   our little flings, innocent, stupid little flings with each

6   other.  And I want you to know, Judge, that I had a few

7   issues when I was young, when I was 13, that sort of made me

8   go a little bit coo coo.  My 13-year-old girlfriend left me

9   because I was afraid to have sex with her and she ran off

10  with my best friend and it traumatized me and in my book I

11  tell about how I went into my sister's room at age 13 and

12  peeled back her panties and looked at her vagina.  I was a

13  curious adolescent, but no molestation.  There's no talk of

14  me molesting my sister.  My sister writes me every day in

15  jail, not every day but every week.

16          I also want you to know, Judge, that the other

17  things I talk about in my book, the other things I did, it

18  was a period that I went through as a teenager and although

19  it involved peeping in windows, although it involved a couple

20  times where I actually crawled inside windows, I don't want

21  you to think that I'm the kind of guy that actually molested

22  children or actually put my hands on kids or touched them in

23  ways that made them uncomfortable.

24          As far as Mallory Monogan is concerned, I

25  think Mr. Fischer tried to bring out, that the truth of the

USA vs Dean Sacco

11

1   matter is that I hung around with Mallory and my niece and

2   the other girls.  I had just gotten out of prison after ten

3   years and I was enjoying their company and I was proud of

4   myself because I didn't have any sexual feelings toward these

5   girls and I felt like I had gotten to a higher consciousness.

6   It was a really great feeling because it was so much better

7   than having any kind of thoughts or feelings.  And one day

8   Mallory fell off her bicycle and I laughed at her and all the

9   girls turned against me and that turned into a tickling

10  incident.  By the time some of these officers got done with

11  her that tickling incident turned into an incident where I

12  had sexually -- I was grabbing her by the vagina and throwing

13  her in the swimming pool.  Judge, I can tell you right now if

14  that happened I could face you and I could say I molested

15  Miss Monogan.  But the thing about me grabbing her vagina and

16  all that stuff, Judge, I'm sorry, none of that happened.

17         And I'll just read my statement quickly.  My

18  greatest concern right now, Judge, is that you think I'm some

19  kind of animal that did something to Shannon when all Shannon

20  and I did was hugged and kissed and snuck around on her mom

21  for six months.  Your Honor, I accepted responsibility

22  recently for having sexual contact with Linda's daughter in

23  Norwich in state court.  In fact, I tried to plead guilty in

24  April 2007 in Norwich but in August 2007, District Attorney

25  McBride rejected the deal and decided to go to trial.  I've

USA vs Dean Sacco

1  been truthful about what happened since my arrest in

2  March 2007.  I cooperated with the presentence investigation

3  investigator and told him the whole story in June 2007.  I

4  told him how I felt like a 14-year-old kid again with

5  Shannon, how we were smooching and doing all this stupid

6  stuff.  I've always been honest and open about my particular

7  behavior, very candid, and as you know I even wrote a book in

8  1998 and kept a journal in 2002.  I had a good job and in

9  2005 I bought a house in Norwich.  I was living a quiet,

10 boring, normal life in Jersey.  I'm a guy that goes to work,

11 grabs a couple of beers after work, I go home, I watch TV, I

12 look at my magazines from the store, generic girlie

13 magazines.  That was pretty much my life.  I go to the

14 laundry mat on the weekend, come up to my house, that was it,

15 Judge, then I met Linda's daughter Shannon.  Our relationship

16 began behind her mother's back.  Her mother was trying keys

17 to the house that I had just given her.  I made keys for the

18 lady, the lady was on the other side of the door trying keys

19 when I initiated a series of hugs with Shannon.  She

20 responded warmly to me and I kind of took it from there.  We

21 went to Wal-Mart next -- and I'll keep this short -- to get a

22 receipt book to pay the rent.  Shannon and I went down all

23 the different hallways in Wal-mart, got away from Linda.  I

24 asked Shannon in one of the isles can I kiss her?  That's how

25 it started.  Our relationship began with hugs and kisses

USA vs Dean Sacco

1   behind her mom's back, Linda's daughter, and I lied to trick

2   and deceive her mom for six months.  We conned her mom.  We

3   fibbed.  We made up stories.  We did things while her mom was

4   napping, while her mom was cooking, while her mom was in the

5   bathroom.  Sometimes her mom would go in the bathroom, I

6   would call Shannon over, give each other a hug and talk and

7   whisper, plan our next -- it was all stupid kid stuff.  We

8   made her mom think we were just behaving like a step dad and

9   step daughter but we weren't.  We made a fool of Linda

10  O'Connor from the very start.  I made Linda think I was this

11  nice guy and Shannon made her mother think that I was like a

12  step daddy and it was just -- our relationship was just

13  stupid kid stuff.  I mean, just like two 14-year-olds, two

14  13-year-olds, whatever you want to call it.

15          I don't know why Linda's daughter made up stories

16  about photos and cameras and her mom being involved with us.

17  I do know that the guy she called grandpa molested and

18  humiliated her because she told me this guy George Lang

19  molested and humiliated her and she told me that this guy

20  George Lang was probably the guy that took her virginity.

21  And, Judge, this poor kid was humiliated and molested by this

22  guy dozens and dozens of times and he basically did the same

23  thing I did.  He took advantage of Linda O'Connor, made Linda

24  think he was interested in her so he could get to Shannon

25  because when Shannon turned about 11-years-old this old man

USA vs Dean Sacco

14

1  became sexually interested in this poor kid and he destroyed

2  her.  He molested her and she told me he was cruel to her and

3  he told me the things he did to her and until she finally

4  gets to the bottom of who really did what, she's not going to

5  be able to heal herself.  It's hard for her to face what

6  George Lang did to her.  It's probably almost impossible.

7  I'm sure she blacked it out because of the depth of humility

8  that he instigated to the poor kid for God knows, a year and

9  a half, whatever it was.

10         Neither Linda nor myself are guilty of any of the

11  federal charges, Judge.  There was no rent for sex.  We never

12  had to exchange rent for sex.  Shannon and I were having fun

13  from day one.  Linda paid four months in advance.  Three

14  months with FEMA money and a check from the Red Cross.  By

15  that time, I mean, from week one Shannon and I were hugging

16  and kissing, getting it on and having our little trysts from

17  day one.  There's no rent for sex.  I don't know where

18  Mr. Lovric came up with that -- for publicity purposes -- I

19  don't know where the rent for sex came.  I don't know where

20  these two black guys in a motel room -- if there's two child

21  molesters still running around in Johnson City, sir, you

22  might want to get on it at some point or perhaps with Shannon

23  telling another mistruth.  There was no child porno, your

24  Honor.  There was no camera.  I've never taken a picture of

25  Shannon, even of her face.  I never raised a camera in front

VICKY ANN THELEMAN, RPR, CRR
UNITED STATES DISTRICT COURT

USA vs Dean Sacco                                          15

1   of Shannon.  Shannon has never seen me with a camera, never,

2   not even once.  It never even occurred to me to take a

3   picture of the young lady.  It didn't even occur to me.  If

4   it occurred to me, maybe I would have said, hey, let's do a

5   picture but to tell the truth, Judge, I never even thought

6   about it.  The girls I looked at in magazines, I've seen

7   thousands of them.  I never thought about it.  Never occurred

8   to me.

9           As far as sex trafficking, I've never had to coerce

10  Shannon or get her to do something.  She was a sexually

11  active young woman that wanted to experience things and I was

12  a guy that knew a little bit more than her and I showed her

13  some things.  There was no pictures, never.  I've never taken

14  a picture.  I've never taken a picture, Judge.  If you look

15  in my eyes, I've never taken a picture of a naked human being

16  in my life.  All the stuff going on with college people and

17  cameras and taking photos and pictures and internet and

18  MySpace and all this stuff, I'm probably the only guy that's

19  never taken a picture in my life of a naked person.  In my

20  life.  There's nobody on this planet that can say Dean Sacco

21  ever took a picture of me while I was naked.  Yes, I wanted

22  to do it like everybody else, I bragged about it.  He played

23  films where I said I was going to do it.  Yes, I wanted to do

24  it.  No, I never did.  Judge, I've never taken a picture of a

25  naked person in my life.

USA vs Dean Sacco

16

1    I'm deeply ashamed of myself, sir.  I'm ashamed of

2    getting involved with an underage, troubled girl.  A girl

3    that would lie to her mom and trick her mom and then send her

4    mom away to die in prison.  And Mr. Lovric's to blame also

5    for not giving her a lie detector test or chance to tell the

6    truth.  He never gave her a chance to tell the true story

7    about George Lang.  Can anybody see that this poor kid is

8    putting -- that she's blacking that out because that's where

9    the real pain is.  So you took the easy road, I'm the scape

10   goat, lock Sacco up because George Lang is dead.  Poor kid

11   can't get him anyway, he died of cancer.  He did some

12   horrible things to her.  Until she gets to that with her

13   therapy and faces the truth, justice is not going to be

14   served her.  Mr. Lovric used the poor girl.  I can't imagine

15   what is going to happen when she realizes he doesn't really

16   care about her.  If he did, he would have compelled her to

17   tell the truth in the very beginning.  All he had to do was

18   ask her to tell her stories a couple of times in a row like

19   any police enforcement agency does to see if they matched.

20   If her stories didn't match, the girl might be troubled and

21   making stuff up.  Then you get to the truth of the matter,

22   Mr. Lovric, then you served the correct justice.  Yes, I had

23   an affair with the girl.  No, none of the federal charges are

24   true.  I'm sorry.  Now, this kid can't have a clear conscious

25   when her mom dies in prison because you're having her like a

1   puppet lying.  I'm ashamed of you, Mr. Lovric.  You did not

2   serve the community this time, man.

3            I understand that there are intense therapy prisons

4   available in the federal system and I've talked to a lot of

5   guys that have gone to these therapy prisons and they've had

6   firsthand experiences with other inmates that have done

7   horrible things to children.  Some of the guys that I talked

8   to said, man, after that therapy I'll never even look at an

9   underage girl again.  It's very effective, very powerful

10  therapy.  I ask that your Honor consider me as a legitimate

11  candidate for these prisons so that I can understand my own

12  psychological deficiency and how I ended up in a secret

13  relationship with a 13-year-old girl.

14            THE COURT:  Okay.  Mr. Fischer, do you know of

15  any reason why I shouldn't sentence Mr. Sacco now?

16            MR. FISCHER:  No, your Honor.

17            THE COURT:  Do you know of any reason why I

18  shouldn't sentence you, Mr. Sacco?

19            THE DEFENDANT:  No, sir.

20            THE COURT:  All right.  The Court, of course,

21  has considered and calculated the sentencing guidelines as it

22  must.  The guidelines are no longer mandatory but are a

23  factor that must be considered by the Court in the sentencing

24  process and the Court has also considered all the sentencing

25  factors set forth in 18 US Code Section 3553(a) and the

USA vs Dean Sacco                                         18

1   sentencing guidelines.  The Court has adopted already the

2   factual content of the presentence report.  The Court finds

3   that the total offense level in this case is a 43 because the

4   sentencing guidelines don't go above 43, even though your

5   level was calculated at a 48.  Your criminal history category

6   is a four and your guideline range is life.

7            Now, leaving the guidelines for just a moment,

8   the Court has to consider what it knows about you, about your

9   background, about your inclinations, about your proclivities.

10  The Court has to consider what happened in this particular

11  case, which in the Court's mind was unbelievable.  The Court

12  believes that you are a seriously sick predator.  The Court

13  believes that you have to be placed somewhere where you can't

14  hurt children again or even attempt to do so and the Court is

15  going to consider that.  The Court would like to think that

16  that might deter you but it doesn't believe that's the case.

17  Hopefully it will deter somebody else who might be

18  considering the same kind of horrific conduct that is

19  involved in this case.  The Court doesn't see much hope for

20  rehabilitation but the Court is going to grant your request

21  and recommend that you receive treatment while you're in the

22  Bureau of Prisons.

23            THE DEFENDANT:  Thank you, your Honor.  I

24  think I can change.

25            THE COURT:  So, upon your conviction by jury

1   trial of counts two, three, four, six, and seven of the

2   indictment, it's the judgment of this Court that you're

3   hereby committed to the custody of the Bureau of Prisons to

4   be imprisoned for a term of life.  This sentence represents

5   terms of imprisonment of life on counts 2 and 3 and 30 years

6   on counts four and six and ten years on count seven, such

7   sentence to run currently with each ear.

8              The Court recommends you participate in the

9   Bureau of Prisons sex offender treatment program.  While in

10  custody the Court orders you submit to a sex offender

11  evaluation made available by the Bureau of Prisons.  If

12  you're determined to be in need of treatment you shall attend

13  and participate in sex offender treatment.  If you violate

14  this order the Court will address this if and when you're

15  ever released from prison.  Furthermore, if you are released

16  from prison, you shall be placed upon supervised release for

17  life on each count of conviction.  All terms to be served

18  concurrently.

19             While on supervised release you shall not

20  commit another federal, state, or local crime and shall

21  comply with the standard conditions that have been adopted by

22  this Court and the following special conditions:  You shall

23  participate in a mental health program that shall include

24  medical, psychological, or psychiatric evaluation and may

25  include outpatient and/or inpatient treatment.  The program

USA vs Dean Sacco                           20

1   shall be approved by the United States Probation Office.  You

2   shall contribute to the cost of any evaluation, testing,

3   treatment and/or monitoring services rendered in an amount to

4   be determined by the probation officer based on your ability

5   to pay and availability of third-party payments.

6                You shall not have any direct contact with a

7   person under the age of 18 unless it's supervised by a person

8   approved by a probation officer.  You shall not have indirect

9   contact with a person under the age of 18 through another

10  person or through a device, including telephone, computer,

11  radio or other means, unless it's supervised by a person

12  approved by the probation officer.  You shall reasonably

13  avoid and remove yourself from situations in which you have

14  any other form of contact with a minor.

15               You shall not be in any area in which persons

16  under the age of 18 are likely to congregate, such as school

17  grounds, child care centers or playgrounds without the

18  permission of the probation officer.

19               You shall not have any direct or indirect

20  contact with any identified victims without the permission of

21  the probation officer.

22               You shall register with the state sex offender

23  registry agency in any state where you reside or are

24  employed, carry on a vocation or are a student.

25               You shall participate in a mental health

USA vs Dean Sacco

1  program which will include, but not be limited to,

2  participation in a treatment program for sexual disorders.

3  The program shall be approved by the United States Probation

4  Office.

5          Your supervised release may include

6  examinations using a polygraph, computerized voice stress

7  analyzer, or other similar devices to obtain information

8  necessary for supervision, case monitoring and treatment.

9  You shall answer the questions posed during the examination,

10  subject to your right to challenge in a court of law, the use

11  of such statements as violations of your Fifth Amendment

12  rights.   In this case you shall be deemed to have not waived

13  your Fifth Amendment rights.   The results of any examination

14  shall be disclosed to the US Probation Office and the Court

15  but shall not be further disclosed without the approval of

16  the Court.

17          You shall not use or possess any computer or

18  any other device with online capabilities at any location,

19  except at your place of employment, unless you participate in

20  the Computer Restriction and Monitoring Program.   You shall

21  permit the United States Probation Office to conduct

22  periodic, unannounced, examinations of any computer equipment

23  you use or possess, limited to all hardware and software

24  related to online use, for example, use of the Worldwide Web,

25  e-mail, instant messaging and the like.   These examinations

USA vs Dean Sacco

1    may include retrieval and copying of data related to online

2    use and the viewing of pictures and movies which may be

3    potential violations of the terms and conditions of

4    supervised release from the computer equipment, including any

5    internal or external peripherals, internet capability

6    devices, and data storage media.  This computer equipment may

7    be removed to the probation office or office of his designee

8    for more thorough examination.  The probation office may

9    install any hardware or software system that is needed to

10   monitor your computer use, subject to the limitations I just

11   set forth.

12           If your employment requires the use of a

13   computer, you may use a computer in connection with the

14   employment approved by the probation officer at your place of

15   employment, provided you notify your employer of the nature

16   of your conviction and fact that your conviction was

17   facilitated by the use of a computer.  The probation office

18   must confirm your compliance with this notification

19   requirement.

20           In the event your treatment provider

21   determines that use of the computer or internet service is

22   contraindicated to your course of recovery, the Court, upon

23   considering such information, may prohibit the use of a

24   computer if the Court is convinced that such is the case

25   based upon the evidence.

USA vs Dean Sacco                                    23

1            You shall submit your person and any property,

2    house, residence, vehicle, papers, computer or other

3    electronic communications or data storage devices or media

4    and effects to search at any time, with or without a warrant,

5    by any federal probation officer from whom the probation

6    office has requested assistance with reasonable suspicion

7    concerning a violation of your conditions of supervised

8    release or unlawful conduct by you.  Any items seized may be

9    removed to the probation office or office of their designee

10   for more thorough examination.

11           While in treatment, and for remainder of the

12   term of treatment, and following completion of treatment you

13   shall not view, possess, own, subscribe to or purchase any

14   material, including pictures, videotapes, films, magazines,

15   books, telephone services, electronic media, computer

16   programs or computer services that depict sexually explicit

17   conduct as defined in 18 US Code Section 2256(2).

18           You shall also pay to the Clerk of the Court a

19   special assessment of five hundred dollars which is due

20   immediately.  The Court finds based on your financial

21   resources, projected earnings and other income you don't have

22   the ability to pay a fine and does not order a fine.

23           Both you and the government have the right to

24   appeal this sentence under certain limited circumstances and

25   you shall consult with your attorney about an appeal.  You

USA vs Dean Sacco                                                24

1   shall file an appeal within ten days of the date of this

2   sentence.

3                   Mr. Lovric, do you have a motion to dismiss?

4                   MR. LOVRIC:   The forfeiture count, yes.

5                   THE COURT:   The forfeiture count, Court orders

6   it dismissed and the Court orders you remanded to the custody

7   of Bureau of Prisons.

8                   Court stands adjourned.

9                   (Court stands adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3

4          I, VICKY A. THELEMAN, RPR, CRR, United

5   States Court Reporter in and for the United States

6   District Court, Northern District of New York, do

7   hereby certify that I attended at the time and place

8   set forth in the heading hereof; that I did make a

9   stenographic record of the proceedings had in this

10  matter and cause the same to be transcribed; that

11  the foregoing is a true and correct copy of the same

12  and the whole thereof.

13

14

15                         _____

16                         VICKY A. THELEMAN, RPR, CRR

17                         United States Court Reporter

18                         US District Court - NDNY

19

20

21  Dated:  December 11, 2008.

22

23

24

25